MARÍA MONSERRATE, known as MONSERRATE SANTIAGO RIVERA, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; SOL LUIS DESCARTES, TREASURER OF PUERTO RICO, Intervener.

No. 227. Argued May 5, 1950.—Decided July 14, 1950.

*Herbert S. McConnell, Raúl Matos* and *Adolfo Valdés,* for petitioner. *Vicente Géigel Polanco, Attorney General (José C. Aponte, Acting Attorney General* on the brief) and *J. B. Fernández Badillo, Assistant Attorney General,* for intervener, respondent in the main action.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

Monserrate Santiago, during her marriage to Vicente Usera, acquired by inheritance, prior to March 1, 1913, a certain farm known as Abey, which according to the Tax Court, was worth $41,800 at the time. The United States

Government condemned it on December 9, 1942, for the sum of $59,800 [1] which was deposited on December 21 in the National City Bank of New York (Ponce Branch) in the checking account of Vicente Usera. In December, 1944 Monserrate Santiago bought the same farm from the United States Government for the price of $59,800, from which the purchaser deducted the sum of $7,000 which was stipulated as the value for the use of the farm during the time the Government was in possession thereof.

On January 4, 1945 the Treasurer of Puerto Rico notified the heirs of Vicente Usera, petitioners herein, among other deficiencies, one corresponding to the tax year 1942 for income by virtue of the condemnation of the Abey farm [2] and another for the years 1940 and 1941 of 47.72 per cent for payments of irrigation rentals [3] corresponding to the redemption of irrigation bonds on certain farms of the estate. From the decision of the Tax Court which sustained in part the deficiencies, the petitioners sought review in this Court by certiorari, which is confined, with respect to the alleged income obtained by Monserrate Santiago in connection with the Abey farm, to the following questions: (1) That the condemnation was not effected since shortly after she had received the price therefor and the government took possession of the farm, several interviews were held which culminated in the reacquisition of the farm by its previous owner in December, 1944; (2) that assuming it were understood that the condemnation was effected, there were no profits, since the farm was reacquired by its previous owner immediately after the condemnation, for the purposes of § 6 (*b*) (5) of the Income Tax Act; (3) that the Tax Court erred in deciding that the value

---

[1] The Government kept the sum of $349.23 from the sum of $59,800 for the payment of property taxes.

[2] Act No. 31 of 1941 required the filing of a joint income tax return for husband and wife even though concerning separate property.

[3] The Tax Court determined that the non-deductible portion in the irrigation tax for the year 1941 was 38.08 per cent.

of the farm on March 1, 1913 was $41,800; and (4) that in any event the sum of $7,000 paid by the United States Government for use of the farm and which had been included in the income tax returns should be deducted from the taxable income.

As to the percentage of the irrigation tax which she was not allowed to deduct, the controversy amounts to the following: (1) That it was a necessary expense in the business of sugar cane planting; and (2) that it had been the administrative practice to allow the total deduction of that expense.

## I

■ The theory that the condemnation was not effected is untenable. Upon filing the declaration of taking and making the deposit in court, title is vested in the condemnor. 40 U.S.C.A. § 258(a) (1940). This has nothing to do with the fact that the Government did not record its title in the registry of property nor with the fact that after the condemnation was effected the previous owner continued to pay the property taxes with the property still in her name.[4]

## II

■■ Assuming that in view of the time elapsed between the condemnation and the reacquisition, the farm could be considered as having been reacquired immediately for the purposes of § 6(b) (5),[5] the petitioners cannot resort to this legal provision since they did not trace the money with which they bought it as arising from the condemnation award.

Interpreting § 203(b) (5) of the Federal Income Tax Act of 1924, identical with § 6(b) (5) of ours, it was said in

---

[4] This situation is easily explained in view of the fact that the farm was condemned on December 9, 1942, the Government did not record its title and on January 15, 1943 the property appeared in the registry of property under the former owner's name. No change was therefore effected when the tax receipts for the fiscal year 1943–1944 were issued.

[5] Section 6(b) (5) of the Insular Income Tax Act, provides:

"If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsory or involuntarily converted

*Frischkorn Development Co.* v. *Commissioner of Internal Revenue*, 30 B.T.A. 8, affirmed in 88 F. 2d 1009 (C.C.A. 6th 1937) case No. 2, that in order to avail itself of the benefit of said Section, it is not sufficient for a taxpayer to prove that subsequent to the receipt of money arising from a condemnation award it purchased other property similar and related in use, but it must trace such money into the payments for the property purchased, and it is entitled to such benefit only to the extent that it has so traced the money. That is, that in order that the taxpayer may receive the benefits of the quoted Act, he cannot invest the condemnation proceeds in something else and purchase with other money similar property.

But, as we have said, the money was deposited in the checking account of Vicente Usera in the National City Bank of New York (Ponce Branch) on December 21, 1942, and it appears from the statements of account of said bank, that not only was the money drawn but that on August 20, 1943, the account was overdrawn for $8,383.52. This being so, it cannot be maintained that the reacquisition of the farm was effected with the condemnation proceeds.

### III

◼ Concerning the value of the property which the Tax Court alleged the property had on March 1, 1913, we must bear in mind that the government experts stated that its value was $25,357, while the petitioners and their experts maintained that it was $51,672.50 for which reason the conclusion reached by the court that the market value of the farm at

---

into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Treasurer, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended."

that time was $41,800 is supported by the evidence. Under such circumstances, we are not justified in disturbing the decision reached by the court to that effect. *People* v. *Carmona*, 70 P.R.R. 292.

## IV

■ The theory of the petitioners that in any event we should deduct from the net taxable income the $7,000 which the taxpayer received from the use of the farm is untenable. This theory is based on the rule of recoupment. But this defense cannot be invoked for the first time on appeal since it must necessarily be alleged in the court of first instance which was not done herein. Rule 13 (*a*) of Civil Procedure; 1 Moore's Federal Practice 667 (1938); McConnell, The Doctrine of Recoupment in Federal Taxation, 28 Va. L. Rev. 577, 597 (1942).

## V

■ The petitioners maintain that the irrigation taxes are deductible as a whole and they invoke the provisions of § 16 (*a*) (1) of the Income Tax Act.[6]

This question was decided against the petitioners in *Descartes, Treas.* v. *Tax Court, Heirs of Genaro Cautiño Insua, Interveners, ante*, p. 230, in denying the motion for reconsideration and it is unnecessary to discuss it again.

As to the fact that the administrative practice was to allow the deduction of all the money paid for irrigation taxes it is enough to say that the evidence did not prove the existence of such practice.

The decision of the Tax Court will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.

---

[6] Section 16 (*a*) (1) of the Income Tax Act, in its pertinent part, provides:

"Section 16.—(*a*) In computing net income there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, . . . . . ."